UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DEBRA DIANE THARP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:18-cv-00878-WCL-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *sued as Andrew M. Saul,* | ) |
| *Commissioner of Social Security*,[1] | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Debra Diane Tharp appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). The appeal was referred to the undersigned Magistrate Judge on February 28, 2019, by District Judge William C. Lee pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), Local Rule 72-1(b), and this Court's General Order 2018-14A for the issuance of a Report and Recommendation. (ECF 16).

Having reviewed the record and the parties' arguments, I RECOMMEND that the Commissioner's decision be REVERSED, and the case be REMANDED for further proceedings as described herein. This Report and Recommendation is based on the following facts and principles of law.

---

[1] Andrew M. Saul is now the Commissioner of Social Security, *see, e.g., Saunders v. Saul*, 777 F. App'x 821 (7th Cir. 2019); *Michael T. v. Saul*, No. 19 CV 1519, 2019 WL 3302215, at *1 n.2 (N.D. Ill. July 23, 2019), and thus, he is automatically substituted for Nancy A. Berryhill in this case, *see* Fed. R. Civ. P. 25(d).

## I.  FACTUAL AND PROCEDURAL HISTORY

Tharp applied for DIB in April 2015 alleging disability as of September 1, 2009, which she later amended to October 16, 2012.  (ECF 13 Administrative Record ("AR") 17, 148, 160).  Tharp was last insured for DIB on March 31, 2013.  (AR 17, 155, 173).  Thus, she must establish that she was disabled as of that date.  *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that she was disabled as of her date last insured in order to recover DIB).

Tharp's claim was denied initially and upon reconsideration.  (AR 78-94, 97-99).  On June 1, 2017, a hearing was held before administrative law judge ("ALJ") Shane McGovern, at which Tharp, who was represented by counsel, and a vocational expert testified (AR 31-77).  On September 29, 2017, the ALJ rendered an unfavorable decision to Tharp, concluding that as of her date last insured she was not disabled because she could perform a significant number of jobs in the economy despite the limitations caused by her impairments.  (AR 17-25).  Tharp's request for review was denied by the Appeals Council (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. § 404.981.

Tharp filed a complaint with this Court in October 2018, seeking relief from the Commissioner's decision.  (ECF 1).  In her appeal, Tharp alleges that:  (1) the ALJ improperly evaluated her symptom testimony; (2) the residual functional capacity ("RFC") assigned by the ALJ is not supported by substantial evidence; and (3) a remand is required because the ALJ was not constitutionally appointed.  (ECF 20 at 11).

As of her date last insured, Tharp was fifty-six years old (AR 78); had obtained her general equivalency degree (GED) (AR 177); and had work experience as a home health aide,

2

property manager/cleaner, and as a stocker at Walmart.  (AR 23, 176, 184-89, 224).  In her application, Tharp alleged disability due to "degenerative changes"; a bulging disc at C5-C6; spinal stenosis; arthritis in her neck, hands, and back; bilateral carpel tunnel syndrome; depression; "pain pill abuse"; and memory loss/forgetfulness.  (AR 176).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard."  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner."  *Id.* (citations omitted).  "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive."  *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted).  "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits."  *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

3

### III.  ANALYSIS

*A.  The Law*

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence:  "(1) whether the claimant is currently [un]employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) . . . whether she can perform her past relevant work; and (5) whether the claimant is incapable of performing any work in the national economy."[2]  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); *see also* 20 C.F.R. § 404.1520.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled.  *Id.*  The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner.

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations.  20 C.F.R §§ 404.1520(e), 404.1545(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. § 404.1520(e).

4

*Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

On September 29, 2017, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 17-25). At step one, the ALJ concluded that Tharp had not engaged in substantial gainful activity after her amended alleged onset date of October 16, 2012, through her date last insured of March 31, 2013. (AR 19). At step two, the ALJ found that Tharp had the following severe impairments as of her date last insured: degenerative disc disease of the cervical spine, osteoarthritis, gastroesophageal reflux disease, and hypertension. (AR 19). At step three, the ALJ concluded that Tharp did not have an impairment or combination of impairments severe enough to meet or equal a listing as of her date last insured. (AR 21).

Before proceeding to step four, the ALJ determined that Tharp's symptom testimony was not entirely consistent with the medical evidence and other evidence of record with respect to her limitations. (AR 22). The ALJ assigned Tharp the following RFC through her date last insured:

> [T]he claimant had the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) except no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; occasional balancing, stooping, crouching, kneeling and crawling; no exposure to moving mechanical parts or unprotected heights; and no exposure to excessive vibration.

(AR 21).

Based on the assigned RFC and the vocational expert's testimony, the ALJ found at step four that Tharp was unable to perform her past relevant work through her date last insured. (AR 23). At step five, however, the ALJ found that Tharp could perform a significant number of medium, unskilled jobs in the economy through her date last insured, including assembler, laundry worker, and sorter. (AR 24). Therefore, Tharp's application for DIB was denied. (AR

5

24-25).

## C. *The RFC Assigned by the ALJ*

Tharp argues, among other things, that the RFC assigned by the ALJ fails to adequately account for all of her mental and physical impairments. Specifically, Tharp faults the ALJ for failing to include any mental limitations in the RFC, and she contends that the physical RFC for medium work assigned by the ALJ is not supported by substantial evidence. For the following reasons, Tharp's argument is persuasive.

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (second emphasis omitted). That is, the "RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* at *1; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 404.1545(a)(3). Therefore, when determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R. § 404.1545(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

1. The Mental RFC

The ALJ found at step two that Tharp's mental impairments were "nonsevere" as of her date last insured. (AR 19-21). More specifically, the ALJ stated:

> The claimant's medically determinable medical impairments of major depression and generalized anxiety disorder, considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore nonsevere. The treating record indicates that the claimant's symptoms were adequately managed with medication. She testified that she did not receive any counseling prior to her date last insured.

(AR 20 (internal citations omitted)).

"The Step 2 determination is a *de minimis* screening for groundless claims . . . ." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (citation and internal quotation marks omitted); *see also Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016). "An impairment is 'not severe' only if it is 'a slight abnormality' that has 'no more than a minimal effect on the ability to do basic work activities[.]'" *Meuser*, 838 F.3d at 910 (alteration in original) (quoting SSR 96-3p, 1996 WL 374181 at *1 (July 2, 1996)); *see also O'Connor-Spinner*, 832 F.3d at 697. "When evaluating the severity of an impairment, the ALJ assesses its functionally limiting effects by evaluating the objective medical evidence and the claimant's statements and other evidence regarding the intensity, persistence, and limiting effects of the symptoms." *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016) (citation omitted).

As the ALJ recognized, Tharp suffered from, and was diagnosed with, major depression and generalized anxiety disorder prior to her date last insured. (AR 20, 282, 286). The Seventh Circuit Court of Appeals in *O'Connor-Spinner* reversed an ALJ's step-two finding of non-severe where the claimant had a diagnosis of "major depression, recurrent severe." 832 F.3d at 693. In

7

doing so, the Court explained: "That determination is not supported by substantial evidence and, indeed, strikes us as nonsensical given that the diagnosis, *by definition*, reflects a practitioner's assessment that the patient suffers from 'clinically significant distress or impairment in social, occupational, or other important areas of functioning.'" *Id*. at 697 (emphasis added) (quoting Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 679-80 (4th ed. Text Rev. 2000)). The Court further explained that because the ALJ "eliminated depression at Step 2, he did not take into account *any* effects which the disorder might have on O'Connor-Spinner's ability to maintain employment." *Id*. at 698. As such, the Court concluded that the ALJ had failed to build an accurate and logical bridge between the evidence of O'Connor-Spinner's mental impairments and the ALJ's conclusion that she was capable of full-time employment. *Id*. The Court emphasized that "[h]ad the ALJ not excluded depression at Step 2, he would have been required to fully explore the restrictions caused by O'Connor-Spinner's depression." *Id*. (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009)).

Similarly, in *Meuser*, the Seventh Circuit criticized the ALJ's step-two finding that Meuser's schizophrenia was non-severe. 838 F.3d at 910 ("We have difficulty imagining how an uncontested diagnosis of schizophrenia . . . could *not* survive Step 2."). The Court found that the ALJ had "conflated Steps 2, 4, and 5" because although the ALJ could still find that Meuser, with medication, could perform work and was not disabled, such "an assessment of the functional limitations caused by an impairment is more appropriate for Steps 4 and 5, not Step 2." *Id*. (collecting cases).

In light of this Seventh Circuit precedent, the ALJ likely erred in finding Tharp's major depression was non-severe at step two. Having said that, "any error that an ALJ commits at step

8

two is harmless as long as [he] goes on to consider the combined impact of a claimant's severe and non-severe impairments." *Loftis v. Berryhill*, No. 15 C 10453, 2017 WL 2311214, at *2 n.1 (N.D. Ill. May 26, 2017) (citing *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015)); *see also Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("A failure to fully consider the impact of non-severe impairments requires reversal." (citation omitted)).

Here, the ALJ indicated at step two that Tharp's mental limitations would be further considered when assigning the RFC:

> The limitations identified in the "paragraph B" criteria are not a [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following [RFC] assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(AR 21). Despite this language at step two, the ALJ never mentioned Tharp's mental impairments after step two and did not include any mental limitations in the RFC. Therefore, there is no indication that the ALJ considered the impact of Tharp's mental impairments, even if non-severe, when assigning the RFC.[3] *See McMillion v. Berryhill*, No. 2:16-CV-77-PRC, 2017 WL 526514, at *8 (N.D. Ind. Feb. 8, 2017) (remanding where the ALJ failed to discuss the non-severe mental limitations in the context of formulating the RFC); *Badger v. Colvin*, No. 2:15-cv-

---

[3] As for the opinion evidence of record, the state agency doctors reviewed Tharp's record in mid-2015 and concluded that there was insufficient evidence to determine any severe mental impairment or assess physical severity prior to Tharp's date last insured. (AR 81, 87-88). Thus, no state agency doctor submitted an assessment of Tharp's functional abilities. The ALJ gave these state agency doctors' opinions "[p]artial weight" and instead found there was "sufficient evidence of impairments causing more than minimal work-related limitations prior to the date last insured." (AR 23).

The only other medical source statement of record was from Dr. Lily Sunio in March 2017, in which she addressed Tharp's chronic kidney disease and hypertension since March 2016. (AR 706-07). The ALJ discussed Dr. Sunio's opinion but found it inapplicable to the time period at issue (AR 23), which neither party disputes.

00392-JMS-MJD, 2016 WL 3476368, at *5-6 (S.D. Ind. June 27, 2016) (same). *Compare Rice v. Berryhill*, No. 17 C 1193, 2018 WL 2049931, at *5 (N.D. Ill. May 2, 2018) (finding that the ALJ's step-two determination that the claimant's major depression was non-severe was not a harmless screening error because the ALJ did not include any mental limitations in the RFC), *with Loftis*, 2017 WL 2311214, at *2 n.1 (finding that the ALJ's step-two determination that the claimant's major depression was non-severe was harmless, because the ALJ went on to consider the combined impact of the claimant's severe and non-severe impairments).

Consequently, the Commissioner's final decision should be remanded for purposes of revisiting the mental RFC.

2. The Physical RFC

Tharp also argues that the physical RFC for medium work assigned by the ALJ is not supported by substantial evidence.[4] Medium work requires lifting or carrying twenty-five pounds frequently and fifty pounds occasionally; standing or walking six hours in an eight-hour workday; frequent bending or stooping; and grasping, holding, or turning objects. SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

In assigning an RFC for medium work, the ALJ cited Tharp's limited and conservative treatment prior to her date last insured; "[i]maging records in September 2012 not[ing] findings of degenerative changes in the spine"; clinical findings of normal sensation, strength, and range of motion, despite complaints of pain and tenderness in her cervical spine; and reports of some

---

[4] Had the ALJ instead assigned Tharp an RFC for "light work," she would have been deemed disabled under the grid rules due to her "advanced age," her educational level, and her lack of transferable skills. *See Dimmett v. Colvin*, 816 F.3d 486, 488 (7th Cir. 2016) (citing 20 C.F.R. Part 404, Subpart P, App'x 2, Table No. 1, Rule 201.06, Table No. 2, Rule 202.06); *Breisch v. Comm'r of Soc. Sec.*, No. 1:16-cv-00098-SLC, 2017 WL 3432316, at *8 (N.D. Ind. Aug. 9, 2017).

10

improvement after physical therapy. (AR 22). After summarizing the medical evidence of record prior to Tharp's date last insured, the ALJ stated: "Overall, the record indicates that the claimant was capable of performing medium work activity despite symptoms of hypertension and GERD." (*Id.*). Later in the decision the ALJ added that the assigned RFC was also supported by Tharp's "continued intermittent work activity cleaning and painting apartments." (AR 23).

The ALJ, however, neglected to consider other important objective evidence in the record pertaining to Tharp's physical impairments—presumably because it was dated after her date last insured. Most notably, the ALJ did not discuss the MRI of Tharp's cervical spine taken in March 2014—just three months after her date last insured—showing degenerative changes, disc bulging, and moderate central canal stenosis and right neural-foraminal stenosis at C5-C6; or the EMG taken in March 2014 showing severe right carpal tunnel syndrome and early/mild C7 radiculopathy.[5] (AR 242, 531, 563). This evidence is material to the relevant period given that it is unlikely Tharp's degenerative conditions developed in the three months after the date last insured. *See McHenry v. Berryhill*, 911 F.3d 866, 872 (7th Cir. 2018) ("[W]e note that McHenry raises a plausible argument that it is unlikely that the level of nerve-root and spinal-cord compression present in her April 2014 MRI developed in the three months after the relevant time period ended."); *Hansen v. Berryhill*, No. 17 C 3131, 2018 WL 3458281, at *3-4 (N.D. Ill. July 18, 2018) (remanding to consider a CT scan taken four months after the claimant's date last insured that showed a variety of moderate to severe degenerative ailments); *Rodney M. v.*

---

[5] While the ALJ did mention that imaging records from September 2012 noted "degenerative changes in the spine," that comment was taken from a chest X-ray report on September 5, 2012, after Tharp complained of chest pain. (AR 22 (citing AR 352)). The ALJ's comment did not encompass the MRI of Tharp's cervical spine and EMG in March 2014.

11

*Comm'r of Soc. Sec.*, No. 6:17-cv-728-SI, 2018 WL 2357535, at *5 (D. Or. May 24, 2018) ("The Commissioner's position that an MRI generated 20 days after the date last insured is not relevant is unpersuasive in the context of a degenerative condition, not to mention extensive Ninth Circuit precedent." (collecting cases)); *see also Brewer v. Berryhill*, No. 17 C 4506, 2019 WL 979249, at *8 (N.D. Ill. Feb. 28, 2019) (remanding to consider evidence dated shortly after the claimant's date last insured as probative of the pain and limitations that the claimant experienced during the relevant period); *Sierra v. Colvin*, No. 2:14-CV-298-TLS, 2016 WL 1128260, at *4 (N.D. Ind. Mar. 23, 2016) (remanding to consider evidence post-dating the claimant's date last insured, noting that the ALJ must consider post-dated evidence that "corroborates or supports the evidence from the relevant period" (citation omitted)); *Montelebre v. Colvin*, No. 14 CV 50057, 2015 WL 856659, at *4 (N.D. Ill. Feb. 27, 2015) (stating that evidence dated a few months after the claimant's date last insured may be relied on to show the claimant's condition within the relevant period).

      Further, in July 2013, Tharp's treating nurse practitioner, Nicole Bikowski, wrote: "[Tharp] has tried medical management along with [physical therapy] with no improvement in pain. Pain is worsening with possible nerve impingement. . . . Waiting on referral to pain management for further evaluation and treatment."[6] (AR 283). While the ALJ acknowledged that Tharp was referred to pain management in July 2013 (AR 22), he did nothing to square this pain management referral and Tharp's continued pain with an RFC for medium work. An ALJ must build an accurate and logical bridge between the evidence and his conclusion. *See Stewart*

---

[6] Tharp then saw a pain management doctor in April 2014 and underwent a cervical epidural steroid injection for her neck pain. (AR 562-64).

12

*v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (emphasizing that the ALJ must connect the evidence of record to his conclusion through "an accurate and logical bridge"); *see also Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (collecting cases).

Also, the ALJ seized upon Tharp's "intermittent work activity cleaning and painting apartments" after her date last insured to support his outcome. (AR 23). But Tharp testified that she primarily showed apartments and did only "a little bit of cleaning," working only "a few hours here and there." (AR 44). Likewise, her work history report reflects that she cleaned apartments just twice a month. (AR 189). And Tharp's earnings report supports her testimony of only very part-time work, as her earnings were approximately $1,200 in 2011 and $1,700 in 2012. (AR 44, 152). Therefore, this past work cleaning apartments on an infrequent basis is a far cry from performing medium work eight hours a day, five days a week. As such, the ALJ failed to build a logical bridge between Tharp's past infrequent work of cleaning apartments, and an RFC for performing medium work eight hours a day, five days a week. *See Stewart*, 561 F.3d at 684; *Blakes ex rel. Wolfe*, 331 F.3d at 569.

Ultimately, of course, "it is not the province of this Court on judicial review to make the factual finding urged by [Tharp] that her MRI [and EMG] results are inconsistent with the ability to perform medium exertional work." *Konz v. Comm'r of Soc. Sec.*, No. 08-5003(DSD/JJK), 2010 WL 760467, at *21 (D. Minn. Mar. 3, 2010). But "[w]hen an ALJ fails to discuss . . . important . . . evidence he not only fails to 'give good reasons' for his decision as required by the regulations, he makes it impossible for the reviewing court to tell whether the evidence was rejected or simply overlooked." *Samuel v. Barnhart*, 295 F. Supp. 2d 926, 946 (E.D. Wis. 2003) (citations omitted) (collecting cases). "And, while the [C]ourt need not remand in search of a

13

perfectly drafted opinion, where the ALJ's decision leaves the reviewing [C]ourt with reservations as to whether an issue was fully addressed, the [C]ourt should reverse." *Id.* (citing *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).

Consequently, given that it is unclear whether the ALJ considered important evidence dated shortly after Tharp's date last insured, and because the ALJ failed to build an accurate and logical bridge between certain other evidence and his conclusion, the Commissioner's final decision should be remanded for reconsideration of the physical RFC as well.[7]

### IV.  CONCLUSION

For the foregoing reasons, I RECOMMEND that the Commissioner's decision be REVERSED, and the case REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties. NOTICE IS HEREBY GIVEN that within 14 days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE

---

[7] Because a remand is warranted for reconsideration of the RFC assigned by the ALJ, it is unnecessary to reach Tharp's remaining arguments. Having said that, it is clear that the ALJ's failure to consider the March 2014 MRI and EMG (and other evidence dated shortly after the date last insured) also impacts the ALJ's evaluation of Tharp's symptom testimony, particularly her complaints of neck pain and problems with repetitive lifting (AR 64-66, 69), because the ALJ found her symptom testimony not well supported by objective medical evidence (AR 22-23). Therefore, the ALJ's assessment of Tharp's symptom testimony should also be reconsidered upon remand.

DISTRICT COURT'S ORDER.  *See generally Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239, 241-42 (7th Cir. 1996).

SO ORDERED.

Entered this 29th day of January 2020.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge